# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SCOTT B. SULLIVAN,

    **Plaintiff,**

    v.

HCA HEALTHCARE, INC., et al.,

    **Defendants.**

Case No. 19-2034-JAR-TJJ

## **MEMORANDUM AND ORDER**

Plaintiff Scott B. Sullivan filed this *pro se* action against Menorah Medical Center ("MMC"), HCA Healthcare, Inc. ("HCA"), Family Health Medical Group of Overland Park, LLC ("Family Health"), Dr. Herbert McCowen, M.D. and Dr. Richard Ruiz, M.D. (collectively, "Treating Defendants"). Plaintiff also brings this action against Diana Rutherford, Susan Williams, Steve Sullivan, Lisa Sullivan, Michelle Safford, Janet Gereau, Jonathan Alan Keck, II, and Bradley McIlnay (collectively, "Family Defendants"). The Court will address all defendants collectively as "Defendants." Plaintiff also brings this action against the United States Department of Justice ("DOJ"), asking that the Court compel the DOJ to investigate his claims of discrimination pursuant to a writ of mandamus.

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff's Amended Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Docs. 27, 28, 32, 34, 49, 52, 59, 60).[1] Plaintiff's Amended

---

[1] The Court considers the Joint Motion to Dismiss filed by Family Health, HCA, Dr. McCowen, and Dr. Ruiz (Doc. 27), Joint Motion to Dismiss filed by Diana Rutherford, Lisa Sullivan, Steve Sullivan, and Susan Williams (Doc. 28), Motion to Dismiss filed by Janel Gereau (Doc. 32), Joint Motion to Dismiss filed by Jonathan Alan Keck, II and Michelle Safford (Doc. 34), Motion to Dismiss filed by Bradley McIlnay (Doc. 49), and Motion to Dismiss filed by Menorah Medical Center (Doc. 52), and the corresponding briefs, responses, and replies in this order.

Complaint (Doc. 22) spans 68 pages and includes numerous allegations. Highly summarized, Plaintiff alleges medical malpractice, discriminatory business practices, and defamation under the Americans with Disabilities Act ("ADA"), racketeering, obstruction of justice, discriminatory animus, and several state law claims including violations of the Kansas Consumer Protection Act, defamation, negligent/intentional infliction of emotional distress, taking, detaining or injuring personal property, conspiracy, and tortious interference with a contract.

Plaintiff proceeds *in forma pauperis* and therefore, under 28 U.S.C. § 1915(e)(2), "the court shall dismiss the case at *any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." When evaluating a Complaint under § 1915(e)(2), the Court applies the same standard of review as under Fed. R. Civ. P. 12(b)(6).[2] The Court finds that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted as to any named Defendant, and accordingly, to the extent this matter is not yet fully briefed, the Court may proceed. For the reasons stated below, Defendants' Motions to Dismiss are **granted**. This case is dismissed in its entirety.

**I. Background**

The Court derives the following facts from Plaintiff's Amended Complaint and construes these facts in the light most favorable to Plaintiff.

Plaintiff suffered from a work-related injury on January 9, 2012.[3]

---

[2] *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[3] Doc. 22 ¶ 83.

Plaintiff sought medical care at Family Health from Dr. Ruiz on February 14, 2015.[4] Dr. Ruiz refused to diagnose or treat Plaintiff's back injury "citing the pendency of [Plaintiff's] worker's compensation claim as his basis for refusal of service."[5]

On October 15, 2015, Menorah Medical Center diagnosed Plaintiff with Tarlov Cyst Disease.[6] Tarlov Cyst Disease is a congenital connective tissue disorder that affects the central and peripheral nervous systems. Plaintiff suffers from severe symptoms "from 'chronic back pain' to radicular neuropathy."[7]

On January 19, 2016, Plaintiff sought medical care at Family Health and was evaluated by Dr. McCowen.[8] Dr. McCowen told Plaintiff "I am not going to look at your back," and did not examine Plaintiff's back.[9]

The Family Defendants "circulat[ed] rumors and speculations that [Plaintiff] was faking [his] disability for the purposes of obtaining drugs and financial compensation."[10] Plaintiff's family "harassed [Plaintiff], intimidated [Plaintiff], defamed [Plaintiff], and attempted to exploit [Plaintiff]."[11] Diana Rutherford told "Dr. McCowen's staff that [Plaintiff] had been diagnosed with 'schizophrenia.'"[12] Rutherford "grabbed [plaintiff] by the arm from behind, yanked on me" and the "sudden twisting motion pinched the nerves in [Plaintiff's] spine, [his] legs collapsed

---

[4] *Id.* ¶ 168.
[5] *Id.* ¶ 169.
[6] *Id.* ¶ 170.
[7] *Id.* ¶ 83.
[8] *Id.* ¶¶ 102, 167.
[9] *Id.* ¶¶ 56, 108.
[10] *Id.* ¶ 208.
[11] *Id.* ¶ 209.
[12] *Id.* ¶ 230.

beneath [him]; and . . . [Plaintiff] spun and slipped and fell to the ground."[13] Susan Williams stated "I should burn these hard drives" when Plaintiff stated he had documentation relating to his claims on those hard drives.[14] Steve Sullivan refused to assist Plaintiff with raising funds to retain an attorney because "[n]o one gives money for back pain."[15] Lisa Sullivan stated "you don't look as bad as you say," to Plaintiff.[16] "At all times, all members of [Plaintiff's] family were demanding that [he] surrender all rights to medical care and benefits; and that [he] surrender possession and residency in [his] home."[17] Michelle Safford and Jonathan Alan Keck II "vandalized and neglected [plaintiff's] home; and ultimately attempted to extort [Plaintiff's] surrender or abandonment of the home."[18]

## II.     Legal Standard

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[19] A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[20] The party who seeks to invoke federal jurisdiction bears the burden of

---

[13] *Id*. ¶¶ 111-12.

[14] *Id*. ¶¶ 232-33.

[15] *Id*. ¶¶ 240-41.

[16] *Id*. ¶ 246.

[17] *Id*. ¶ 251.

[18] *Id*. ¶ 248.

[19] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[20] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

establishing that such jurisdiction is proper.[21] Mere conclusory allegations of jurisdiction are not enough.[22]

Plaintiff bears the burden of establishing that federal jurisdiction exists.[23] Plaintiff asserts that the Court has federal question jurisdiction pursuant the ADA, RICO Act, Civil Rights Act, constitutional question, action to compel an officer of the United States to perform his duty, and supplemental jurisdiction.[24] Accordingly, the Court considers whether Plaintiff has established federal jurisdiction under federal question jurisdiction.

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim where the plaintiff has failed "to state a claim upon which relief can be granted." To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] When evaluating a 12(b)(6) motion to dismiss, the court must accept all facts well-pleaded by the non-moving party as true and must grant all reasonable inferences in favor of the non-moving party.[27] Legal conclusions couched as factual allegations are not accepted as facts by the court.[28] For the

---

[21] *Montoya*, 296 F.3d at 955.

[22] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[23] *McBride v. Doe*, 71 F. App'x 788, 789–90 (10th Cir. 2003) (holding a *pro se* plaintiff attempting to assert diversity jurisdiction bears the burden of establishing federal jurisdiction if plaintiff wishes to invoke such federal jurisdiction, despite the plaintiff's *pro se* status).

[24] Doc. 22 ¶ 15.

[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[27] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[28] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

court to deny this motion, a plaintiff must state a plausible claim, which requires "sufficient factual allegations to 'raise a right to relief above the speculative level.'"[29]

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Where "the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56."[30] The court should do so by converting the Rule 12(b)(1) motion for lack of jurisdiction to a 12(b)(6) motion to dismiss.[31] "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"[32] Here, the issue of federal question jurisdiction is intertwined with the merits of Plaintiff's claims. Accordingly, the Court will convert the Rule 12(b)(1) Motion to a Rule 12(b)(6) Motion to Dismiss. The Court will, pursuant to Fed. R. Civ. P. 12 (b)(6), consider whether Plaintiff has stated a federal claim upon which relief may be granted.

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[33] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal

---

[29] *Id.*

[30] *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *see also Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

[31] *Franklin Sav. Corp.*, 180 F.3d at 1129.

[32] *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)).

[33] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

theory on a plaintiff's behalf."³⁴  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.³⁵

## III. Discussion

### A. Federal Claims

As an initial matter, to the extent Plaintiff asserts claims on behalf of other allegedly similarly situated individuals with Tarlov Cyst Disease, the Court finds that he does not have standing to do so.³⁶  Accordingly, the Court only considers Plaintiff's individual claims.

#### 1. Statute of Limitations

First, Defendants assert that Plaintiff's claims are time-barred by their respective statutes of limitations.  Plaintiff asserts claims for medical malpractice, discriminatory business practices, and defamation under the ADA³⁷ and a discriminatory animus claim under 42 U.S.C. § 1981³⁸ against the Treating Defendants.  ADA³⁹ and 42 U.S.C. § 1981⁴⁰ claims are subject to a two-year statute of limitation period.

---

³⁴ *Id.*

³⁵ *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

³⁶ *See RMA Ventures Cal. v. SunAmerica Life Ins.*, 576 F.3d 1070, 1073 (10th Cir. 2009) ("A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others.").

³⁷ Doc. 22 ¶¶ 168-69, 176, 177, 195, 198; Doc. 36 at 29. The Court construes Plaintiff's action under Title II of the ADA. 42 U.S.C. § 12133.

³⁸ Doc. 22 ¶¶ 262, 267, 270, 287.

³⁹ *See* K.S.A. §§ 60-513(a)(4), (7). Federal law does not provide a limitations period for claims under Title II of the ADA. *See Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683 (5th Cir. 1998) (citing *Doe v. Cty. of Milwaukee,* 871 F.Supp. 1072, 1076 (E.D.Wis. 1995)).  "The selection of a limitations period applicable to [ADA] cases is governed by 42 U.S.C. § 1988(a), which directs the court to 1) follow federal law if federal law provides a limitations period; 2) apply the common law, as modified by state constitution or statute, if no limitations period is provided by federal law; but 3) apply state law only if it is not inconsistent with the Constitution and laws of the United States." *Id.* (citing *Hickey v. Irving Indep. Sch. Dist.,* 976 F.2d 980, 982 (5th Cir. 1992)). Accordingly, Kansas personal injury law governs the statute of limitations period.

⁴⁰ *See Baker v. Bd. of Regents*, 991 F.2d 628, 630 (10th Cir. 1993) (citing 42 U.S.C. § 1988) (holding a two-year statute of limitations applies to 42 U.S.C. § 1981).

Plaintiff's last contact with Dr. Ruiz was on January 4, 2015.[41] Plaintiff's last contact with Dr. McCowen, HCA, and Family Health was January 19, 2016.[42] Accordingly, his claims expired on January 4, 2017 and January 19, 2018, respectively. Plaintiff filed this suit on January 22, 2019, and accordingly, his ADA and § 1981 claims against Treating Defendants are time-barred. Similarly, Plaintiff's obstruction of justice claim under the ADA against Family Defendants is time-barred by the two-year statute of limitations.[43] Plaintiff's last alleged contact with the Family Defendants was in May of 2016, and thus, any ADA claim expired in May 2018.[44] Accordingly, his ADA claims against Family Defendants are time-barred.

Plaintiff argues that the statute of limitations should have been tolled due to Plaintiff's disability, equitable tolling, or equitable estoppel.[45] While the Court is sympathetic to Plaintiff's difficulties, the Court finds that he has not articulated any reason to justify the tolling of his claims. First, Plaintiff alleges he has a physical disability which tolls the statute of limitations.[46] Because state law provides the statute of limitations period for Plaintiff's Title II ADA claim, state law also determines any tolling of the limitations period.[47] Under Kansas law, an incapacitated person may toll the statute of limitations for one year after a person's disability is removed.[48] An "incapacitated person" is defined as:

---

[41] Doc. 22 ¶¶ 168, 188.

[42] *Id.* ¶¶ 100, 102, 168, 188.

[43] *Id.* ¶ 205.

[44] *Id.* ¶ 91.

[45] *Id.* ¶¶ 31-33.

[46] *Id.* ¶¶ 31-32.

[47] *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).

[48] K.S.A. § 60-515(a) ([I]f any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is . . . an incapacitated person . . . such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on

> an individual whose ability to receive and evaluate relevant information, or to effectively communicate decisions, or both, even with the use of assistive technologies or other supports, is impaired to the degree that the person lacks the capacity to manage the person's estate, or to meet essential needs for the person's physical health, safety or welfare, as defined in K.S.A.2002 Supp. 59–3051, and amendments thereto, whether or not a guardian or a conservator has been appointed for that person.[49]

Plaintiff does not allege that he lacked the capacity to manage his estate or otherwise meet his essential needs of his physical health, safety or welfare. Accordingly, he does not qualify as an incapacitated person under K.S.A. § 77-201, and the statute of limitations is not tolled under Kansas law.

Next, Plaintiff asserts that the statute of limitations should be tolled on equitable grounds. "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."[50]

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.[51]

---

behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.)

[49] K.S.A. § 77-201 (thirty-first).

[50] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert denied*, 531 U.S. 1194 (2001) (explaining equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances.").

[51] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (citing *Baldwin Cty. Welcome Center v. Brown*, 466 U.S. 147, 151 (1984)).

Plaintiff asserts that the statute of limitations as to his claims against Treating Defendants should be equitably tolled due to "fraudulent concealment."[52] Plaintiff alleges "fraudulent concealment of prior acts of medical malpractice through ongoing patterns of racketeering activity."[53] Plaintiff's Amended Complaint alleges no factual support for his conclusion that the Treating Defendants concealed facts or engaged in racketeering activity which prevented Plaintiff from timely filing his claims. On January 19, 2016, Plaintiff was aware of the factual basis of the claims asserted in the present action. Moreover, Plaintiff explicitly states "[p]ain and fear [are] the only reasons that I have not pursued these claims . . . for the past three years."[54] The Court finds that Plaintiff has not pled sufficient facts to warrant equitable tolling. The statute of limitations for Plaintiff's ADA and § 1981 claims have run, and Plaintiff's claims under these statutes are time-barred. Nevertheless, out of an abundance of caution, the Court considers whether Plaintiff has stated any claim for relief under the ADA, 42 U.S.C. § 1981, RICO, the Constitution, or 28 U.S.C. § 1361.[55]

### 2. ADA and Rehabilitation Act

Plaintiff asserts numerous claims under the ADA, including disability discrimination, medical malpractice, discriminatory business practices, and obstruction of justice. To the extent Plaintiff raises additional ADA claims in his Response, the Court does not consider those here.[56] Plaintiff also appears to raise a claim under the Rehabilitation Act, although he does not provide

---

[52] Doc. 22 ¶ 33.

[53] Doc. 22 ¶ 33.

[54] Doc. 22 ¶ 68.

[55] Plaintiff additionally asserts proper jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1337. The Court considers only the specific federal statutes under which federal jurisdiction may be conferred.

[56] Doc. 36 at 18, 29. *See supra* Section C, Leave to Amend.

any separate argument or factual support for this claim.[57] The Rehabilitation Act prohibits programs receiving federal financial assistance from discriminating solely on the basis of disability.[58] For purposes of stating a claim, "[c]ase law interprets the Rehabilitation Act and the ADA as interchangeable."[59] Accordingly the Court considers whether Plaintiff has stated a claim under the ADA or Rehabilitation Act together.

First, Plaintiff asserts a claim for disability discrimination and medical malpractice under the ADA.[60] To establish a prima facie case under the ADA, a "plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[61] To establish the first element, a plaintiff is obligated to show that he was "otherwise qualified" for the benefits he sought.[62] The Tenth Circuit has held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'"[63] In *Fitzgerald v. Corr. Corp. of Am.*, the plaintiff alleged the doctors and jail staff refused to treat him for his diabetes because he was disabled with diabetes.[64] The court held the plaintiff was not "otherwise qualified" for treatment in the absence of his disability.[65] The court

---

[57] Doc. 22 ¶18.

[58] 29 U.S.C. 794(a).

[59] *Faroh v. Sedgwick Cty., Kansas*, No. 98-1138-JAR, 2002 WL 1627701, at *5 (D. Kan. July 12, 2002).

[60] As discussed above, the Court construes Plaintiff's claims under Title II of the ADA. *See generally* 42 U.S.C. § 12132.

[61] *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *J. V. ex rel. C. V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

[62] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citing *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

[63] *Id.* (emphasis added).

[64] 403 F.3d at 1144.

[65] *Id.*

explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'"[66] "These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA."[67]

Plaintiff asserts the Treating Defendants committed medical malpractice in their treatment of Plaintiff, namely by discriminatorily failing to timely diagnose or treat him for Tarlov Cyst Disease. On February 14, 2015 Plaintiff sought medical care at Family Health from Dr. Ruiz, but Dr. Ruiz refused to diagnose or treat Plaintiff's back injury ". . . citing the pendency of [Plaintiff's] worker's compensation claim as the basis for refusal of service."[68] On January 19, 2016 Plaintiff sought medical care at Family Health and was evaluated by Dr. McCowen but Dr. McCowen said "I am not going to look at your back," and did not examine Plaintiff's back.[69]

Plaintiff alleges that Treating Defendants refused to diagnose Plaintiff with, or treat Plaintiff for, Tarlov Cyst Disease because he has Tarlov Cyst Disease.[70] Plaintiff is not "otherwise qualified" for treatment of Tarlov Cyst Disease in the absence of his alleged disability, Tarlov Cyst Disease. Moreover, to the extent Plaintiff asserts a claim for medical malpractice or negligence under the ADA, it is well settled law in the Tenth Circuit that the ADA does not provide a private right of action for medical malpractice.[71] Accordingly, Plaintiff fails

---

[66] *Id.* (quoting *United States v. Univ. Hosp.*, 729 F.2d 144, 157 (2nd Cir. 1984)).

[67] *Id.*

[68] Doc. 22 ¶¶ 168-69.

[69] *Id.* ¶¶ 56, 102, 108, 167.

[70] *Id.* ¶¶ 49, 194.

[71] *See Fitzgerald*, 403 F.3d at 1144; *see also Anderson v. Colorado*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012).

to state a prima facie case under the ADA because he fails to plausibly plead that he was "otherwise qualified" for the benefits he sought.

Plaintiff next asserts a discriminatory "business practice" claim under the ADA.[72] Plaintiff asserts there is an industrywide or nationwide "refusal to diagnose and treat Tarlov Cysts" by corporations "intend[ing] to conceal the rampant medical malpractice committed against people with Tarlov Cyst Disease."[73] Plaintiff asserts Dr. McCowen, Dr. Ruiz, Family Health, and Menorah Medical Center are employees or subsidiaries of HCA healthcare and "operate[] pursuant to the requirements and guidelines enforced upon them by direction of HCA healthcare."[74]

Plaintiff has asserted no factual support for his conclusory statements that these individual defendants engaged in discriminatory business practices. Instead, Plaintiff asserts that because "a business practices claim is a fact driven inquiry," it would be "premature to dismiss in advance of discovery."[75] To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[76] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[77] Plaintiff's conclusory allegation that there is a nationwide or industry-wide practice of discriminatory business

---

[72] Doc. 22 ¶ 60.

[73] *Id.* ¶¶ 60, 177.

[74] *Id.* ¶¶ 166-67.

[75] *Id.* ¶ 61.

[76] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

practices against individuals with Tarlov Cyst Disease does not establish facial plausibility as required by *Iqbal* and *Twombly*.[78]

Accordingly, the Court finds that Plaintiff has failed to plausibly plead an actionable claim under the ADA or Rehabilitation Act. All of Plaintiff's claims under the ADA and Rehabilitation Act against all Defendants are dismissed.

### 3. RICO

Next, Plaintiff alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO").[79] To plausibly plead a RICO claim, Plaintiff must offer *factual support* to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[80]

Plaintiff asserts that Family Defendants committed ". . . racketeering for the purposes of interference with plaintiff's access to benefits under his private health insurance policy; interference with plaintiff's access to law enforcement and/or benefits under the allegedly fraudulent worker's compensation policies of plaintiff's employer."[81] He also asserts that they "began to harass me, intimidate me, defame me, and attempt to exploit me."[82] Finally, he asserts "Hobbs Act" violations based on Defendants' demands that Plaintiff "surrender all rights to medical care and benefits."[83] The Court finds that these allegations do not provide any factual basis for any pattern of *criminal* racketeering activity under the statute.[84]

Further, Plaintiff has not pled any factual support for his claim that the Family

---

[78] *See generally* 550 U.S. 544; 556 U.S. 662.

[79] 18 U.S.C. § 1962.

[80] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

[81] Doc. 22 ¶ 207.

[82] *Id*. ¶208.

[83] *Id*. ¶251.

[84] *See* 18 U.S.C. § 1961 (defining racketeering activity).

Defendants are an enterprise under federal law.[85] Instead, he states in conclusory fashion that his "family formed an enterprise in fact."[86] While the Court liberally construes Plaintiff's *pro se* Amended Complaint, it will not add factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[87] Plaintiff has failed to state a RICO claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

### 4. Obstruction of Justice

Plaintiff alleges obstruction of justice violations under the ADA, RICO, 42 U.S.C. 21 §§ 1981–1988.[88] However, Plaintiff's Complaint is entirely void of factual support or argument for this claim. At various places in his Complaint, Plaintiff alleges "the behaviors of my mother and of my sister on [January 19, 2016] were a part of their own ongoing pattern of abusive, and deceptive, and unconscionable acts intended to obstruct my access to medical care for personal, vindictive, retaliatory, and even political reasons," and "Tarlov Cyst sufferers . . . are cut off from medical care for obstruction of justice motivations."[89] These vague and conclusory allegations fail to plead a claim for relief.

Moreover, "Obstruction of Justice" is a criminal statute and therefore creates no private right of action.[90] Further, to the extent Plaintiff seeks to bring an obstruction of justice claim under the ADA, Rehabilitation Act, or § 1981, no such cause of action exists under these

---

[85] *See Boyle v. United States*, 556 U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette,* an association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct.") (internal citation removed).

[86] Doc. 22 ¶214.

[87] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[88] Doc. 22 at 5, 43.

[89] *Id*. ¶¶118, 227.

[90] 18 U.S.C. §§ 1501-1521.

statutes. Additionally, regardless of the statute the claim is brought under, Plaintiff's conclusory allegations fail to state a claim for relief. Accordingly, Plaintiff has failed to state an obstruction of justice claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

### 5. Civil Rights Act

Next, Plaintiff alleges "discriminatory animus" under 42 U.S.C. § 1981.[91] Section 1981 protects the right of all persons to "make and enforce contracts" which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[92] No "discriminatory animus" cause of action exists under this statute. Similarly, no "discriminatory animus" cause of action exists under "the Civil Rights Acts."[93] Black's Law Dictionary defines animus as "[a] prejudicial disposition toward a discernible, usually constitutionally protected, group of persons" and instructs that "[a] class-based animus is an essential element of a civil-rights conspiracy case."[94] In other words, "discriminatory animus" may be an element of a cause of action but there is no such cause of action itself.

Further, Plaintiff asserts no specific factual allegations to support his § 1981 claim. The Tenth Circuit has held "a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities."[95] Plaintiff asserts no particular contract loss or any particular benefit or

---

[91] Doc. 22 at 53.

[92] 42 U.S.C. § 1981(b).

[93] *See generally* 42 U.S.C. §§ 1981, 2000.

[94] ANIMUS, BLACK'S LAW DICTIONARY (11th ed. 2019).

[95] *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1195 (10th Cir. 2002) (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001)).

privilege he was denied. Rather, he asserts generally that he is subject to "abuse, neglect, and exploitation" from others, including doctors, because he has Tarlov Cyst Disease.[96] These assertions are not specific to any particular action of any defendant in this case. Plaintiff also asserts the "social animus" is "cultural" and should therefore be protected under the Civil Rights Act.[97] However, the Tenth Circuit has held that § 1981 does not extend to disability discrimination.[98] Accordingly, Plaintiff has failed to state a § 1981 claim against any Defendant.

### 6. Constitutional Question

Plaintiff asserts there is a constitutional question at issue in this case, and accordingly, the Court has federal subject matter jurisdiction. Plaintiff asserts "the constitutional disputes alleged herein arise under the Fifth, Fourteenth, Amendment to the United States Constitution."[99] More specifically, Plaintiff asserts his case is a "constitutional challenge to the arbitrary nature of the phrase 'conclusory allegation'" under *Twombly* and *Iqbal* which creates an "unconstitutional wealth based disparity in access to due process of law."[100] Plaintiff provides no other argument or authority regarding this claim, and the Court declines his invitation to revisit long-established and binding Tenth Circuit and Supreme Court precedents.

### 7. Specific Relief under 28 U.S.C. § 1361

Plaintiff requests this Court to "compel law enforcement intervention and investigative resources to preserve the interests of the United States and all protected citizens."[101] 28 U.S.C. § 1361 gives district courts original jurisdiction "to compel an officer or employee of the

---

[96] Doc. 22 ¶¶ 262, 267, 270.

[97] *Id*. ¶ 287.

[98] *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997).

[99] Doc. 22 ¶20.

[100] *Id*. ¶26.

[101] *Id*. ¶24.

United States or any agency thereof to perform a duty owed to the plaintiff." "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."[102] To obtain mandamus relief, the plaintiff must show that he has a clear right to the relief sought, the defendant has a plainly defined and peremptory duty to perform the act in question, and no other adequate remedy is available.[103] Courts have no authority under the mandamus statute to order a government official to perform a discretionary duty.[104] The Attorney General possesses broad discretion whether to investigate or prosecute claims on behalf of the United States.[105] Accordingly, Plaintiff has not and cannot establish a preemptory duty owed by the DOJ, and Plaintiff's motion to compel the DOJ must be dismissed.

### B. State Law Claims

Plaintiff's remaining claims are brought under Kansas state law. The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[106] Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[107] Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[108]

---

[102] *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam); *West v. Spellings*, 480 F. Supp. 2d 213, 217 (D. D.C. 2007).

[103] *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

[104] *See West*, 480 F. Supp. 2d at 217.

[105] *See, e.g.*, *Daiflon*, 449 U.S. at 36; *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991).

[106] 28 U.S.C. § 1367(c)(3).

[107] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997); *see Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010).

[108] *Id.* (citations omitted).

The Court finds that all of Plaintiff's federal claims are subject to dismissal. This case is at the pleading stage, and no discovery has occurred. Thus, the Court exercises its discretion and declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims.

### C. Leave to Amend

Plaintiff, in his Responses, asks the Court for leave to amend in the event of insufficiencies in the pleading.[109] Under Fed. R. Civ. P. 15(a)(2), the court "should freely give leave when justice so requires." Under the present circumstances, the Court finds that justice does not so require. Plaintiff already filed a 68-page Amended Complaint, which added no relevant factual basis for the claims before the Court.[110] Based on the numerous pleadings before this Court, the Court finds that leave to amend would be futile and create undue prejudice for the opposing parties.[111]

### D. Attorneys' Fees

Finally, some Family Defendants ask the Court to award costs and attorneys' fees incurred in defending against the claims asserted against them by Plaintiff.[112] "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."[113] Nevertheless, attorneys fees may be awarded pursuant to Fed. R. Civ. P. 11, if "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." The Court must impose a sanction that is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[114] "The primary

---

[109] Docs. 35 at 9, 36 at 11, 40 at 25, 45 at 14, 53 at 27, 55 at 27.

[110] *Compare* Doc. 1 *with* Doc. 22.

[111] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[112] Doc. 28 at 2,

[113] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

[114] Fed. R. Civ. P. 11(c)(4).

goal of sanctions is to deter misconduct."[115]  Appropriate sanctions may include dismissal, striking of a complaint, striking of offending references, a formal reprimand, imposition of court fines, or award of attorney's fees and/or costs to the victim of the litigation abuse.[116]

The Court finds that sanctions are inappropriate at this juncture.  While the Court agrees that Plaintiff has failed to state any cognizable claim, this is the only lawsuit filed by Plaintiff in this Court against these Defendants.  Moreover, Defendants did not comply with the safe-harbor provision in Rule 11(c)(2), which allows the challenged claim to be withdrawn or corrected within twenty-one days of service.  Accordingly, Family Defendants' request for costs and fees is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motions to Dismiss (Docs, 27, 28, 32, 34, 49, 52, 59, 60) are **granted**.  This case is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: August 26, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[115] *Resolution Tr. Corp. v. Williams*, 162 F.R.D. 654, 660 (D. Kan. 1995) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990)).

[116] *See, e.g.*, Fed. R. Civ. P. 11(c)(4); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990) (explaining that district courts have "broad discretion to impose Rule 11 sanctions"); *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) (reviewing district court decision imposing Rule 11 sanctions pursuant to abuse of discretion standard); *Stewart v. City of Chi.*, 622 F. Supp. 35, 37–38 (N.D. Ill. 1985) (striking complaint as sanction pursuant to Rule 11).